

*Nicholas Gordon*
*488 Madison Avenue*
*18th Floor*
*New York, NY 10022*
*Direct Dial: 212 446-9783*
*General: 212 935-5500; Fax 212 308-0642*
*Email: ngordon@fwrv.com*

March 16, 2011

BY HAND DELIVERY

The Honorable Victor Marrero
Chambers
Suite 660
United States Courthouse
500 Pearl Street
New York, NY 10007

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 3/17/11

RE:  Rabbi Akiva Herzfeld vs. Hayim Tawil - Index No. 1:10-CV-09122-VM

Dear Judge Marrero,

I have a problem with my admission to SDNY which of course affects my ability to file an Answer and counterclaim to the above Complaint.

I was certain I was admitted in 1973, right after my admission to the New York State bar; and as best I recall this was confirmed to me by the litigation section of my employer in 1975 [I was in the corporate law department] when I was asked to stand by to be a second chair in a copyright matter at SDNY.    But that case was settled and I was not called to act on it.  I have not been handling litigation all these years, except to assist others who were the official counsel, so I was unaware that I was not in the system.    This may explain, though perhaps not excuse, some of my naiveté in these matters.

Because of that limited experience, when I first could not get into the electronic process (which was novel technology to me) I thought it was for inadequate information.  I searched my records but since it has been thirty eight years, I do not have back up.  I don't know if others of my years have had this problem; or perhaps such admissions lapse; or perhaps I misunderstood my own standing (on two occasions, it seems).

Had I realized this, of course, I would have simply applied for admission and by this time it would hopefully not have been a problem.  [I attach a copy of a certificate of good standing from New York State which I obtained recently.]

319443/1

Lest the Court think this is an attempt to gain more time, it is not the case.  I delivered to counsel for Plaintiff, the Answer and Counterclaim on the date to which they had graciously granted me an extension.  [I am enclosing a copy.]  But it was only then that I discovered I must submit electronically to the Court, which I was unable to do.  While I searched my files at home, I also asked a colleague outside my firm to take over, until I could formally retake the reins, but there was a misunderstanding and it did not happen.  (I also believe that when he saw the extension for the co-defendant in this matter, he thought that there was an extension for my paperwork as well.)  In any event, he is disinclined now to deal with this, and frankly it would be a further waste of steps, as I want to handle it myself anyway and would like to avoid further delays.

It was suggested to me that I give up trying to figure out what took place thirty eight years ago and simply apply *pro hac vice*.  I obtained the certificate of good standing (attached) and I will have a sponsor.  I will file a motion as soon as possible.  But perhaps there is a quicker procedure for this, so at least to enable me to have the Court's date stamp on this before plaintiff's counsel is scheduled to receive the co-defendant's answer which is due April 1.

To whatever extent this necessitates Plaintiff's attorneys being given more time to do their paperwork, that would of course be expected.  They already granted me an extension, and I would reciprocate in any way I reasonably could.  While on the one hand, they have had my Answer, I would understand their reluctance to rely on that for response, in case something different is filed by me (although I have assured them that this would not happen).  So I very much want this to be in order no later than the required answer from the co-defendant.

If there is anything else I need to do, I am prepared to comply and make up for my lack of experience here.  I care only that my client is not prejudiced by this.  If the Court wonders why I would insist on being the one to handle this matter, given that it is not my normal practice, the answer is complex and delicate.  So I hope no explanation is requested; but if it is, I will answer at that time.  [If I may also pose some passing questions:  Is there some special search that can be undertaken to see if I was once in the system but fell out of it, and if one day I find evidence of that prior admission, would I be upsetting things by having two of me in the system, or do I just ignore that prior filing?]

Respectfully submitted,

Nicholas Gordon

cc:  James K. Chang, Esq.

Counsel should promptly complete his application to admission *pro hac vice* in this action, while he seeks confirmation from the Clerk of Court's public records about his status of his prior admission. Adjustments

**SO ORDERED:** in filing dates can be made as appropriate if warranted counsel acts with due diligence.

**DATE** 3-17-11   **VICTOR MARRERO, U.S.D.J.**

319443/1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X

RABBI AKIVA HERZFELD,                           :

                                Plaintiff,      :

        - against -                             : **ANSWER TO COMPLAINT
                                                AND COUNTERCLAIMS**

                                                Index No. 1:10-CV-09122-VM
HAYIM TAWIL,                                    :

and                                             

THE JEWISH PUBLICATION SOCIETY                  :

                                Defendant.      :

--------------------------------------X

HAYIM TAWIL                                     :

        Counterclaim Plaintiff,                 :

        -  against –                            :        DEMAND FOR
                                                         JURY TRIAL
RABBI AKIVA HERZFELD,                           :

        Counterclaim Defendant.                 :

--------------------------------------X


        **Defendant Hayim Tawil ("Tawil") by his attorney, Nicholas Gordon, as and
for his answer to the complaint (the "Complaint") herein, alleges as follows:**

        1.      Denies knowledge or information sufficient to form a belief as to the truth
of the allegations contained in paragraph 1 of the Complaint.

        2.      Admits the allegations contained in paragraph 2 of the Complaint except

the characterization of Tawil's authorship as merely "claims".

3.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of the Complaint.

4.      Denies each and every allegation contained in paragraph 4 of the Complaint except admits that this Court has jurisdiction over this matter, but not for the reasons given.

5.      With respect to paragraph 5 of the Complaint repeats and re-alleges the response to paragraph 4 of the Complaint as if fully set forth herein

6.      Denies each and every allegation contained in paragraph 6 of the Complaint except admits that the Court has jurisdiction over Tawil in this matter.

7.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint.

8.      Admits the allegations contained in paragraph 8 of the Complaint.

9.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint.

10.      Denies each and every allegation contained in paragraph 10 of the Complaint except admits that Tawil asked Herzfeld to contribute services to a work regarding Aleppo.

11.      Denies each and every allegation contained in paragraph 11 of the Complaint except admits that the agreement referred to was executed.

12.      Denies each and every allegation contained in paragraph 12 of the Complaint, except that certain characterizations of portions of the document referred to were correctly reflected.

13.     With respect to paragraph 13 of the Complaint, repeats and re-alleges each and every response to paragraph 12 of the Complaint as if fully set forth here.

14.     Denies each and every allegation contained in paragraph 14 of the Complaint, but admits that a contract was entered into.

15.     Admits the allegations contained in paragraph 15 of the Complaint.

16.     Admits the allegations contained in paragraph 16 of the Complaint, except denies that the Book was a "proposed Joint Work".

17.     Denies each and every allegation contained in paragraph 17 of the Complaint, except admits that there was an agreement that if Herzfeld fully completed his services he would be given credit in connection with the Book.

18.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint, except admits that Tawil paid Herzfeld additional amounts.

19.     Denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint.

20.     Denies each and every allegation contained in paragraph 20 of the Complaint but admits that some work was submitted by Herzfeld to Tawil during that period of time.

21.     Denies each and every allegation contained in paragraph 21 of the Complaint, except admits that JPS expressed interest in publishing a work on the Crown of Aleppo and that Ellen Frankel was involved.

22.     Denies each and every allegation contained in paragraph 22 of the Complaint, except admits there were discussions during the period and exchanges of correspondence.

3

23.     Admits the allegations contained in paragraph 23 of the Complaint, except denies that the Book was a "Jointly Authored Book" and denies that Herzfeld returned all the materials.

24.     Denies each and every allegation contained in paragraph 24 of the Complaint but admits Yeshiva University has a policy regarding academic integrity.

25.     With respect to paragraph 25 of the Complaint repeats and re-alleges each and every response to paragraph 24 of the Complaint as if fully set forth herein.

26.      Admits the allegations set forth in paragraph 26 of the Complaint.

27.     Denies each and every allegation contained in paragraph 27 of the Complaint, except admits that the right hand columns reflects excerpts from the Book.

28.     Denies each and every allegation contained in paragraph 28 of the Complaint.

29.     Denies each and every allegation contained in paragraph 29 of the Complaint.

30.     Denies each and every allegation contained in paragraph 30 of the Complaint, except admits that Tawil is identified as an author of the Book.

31.     Denies each and every allegation contained in paragraph 31 of the Complaint.

32.     With respect to paragraph 32 of the Complaint, repeats and realleges every response to paragraphs 1 through 31 of the Complaint as if fully set forth herein.

33.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of the Complaint.

34.     Denies each and every allegation contained in paragraph 34 of the Complaint.

4

35.     Denies each and every allegation contained in paragraph 35 of the Complaint, except admits that Herzfeld submitted written materials in connection with the work for which he was engaged.

36.     Denies each and every allegation contained in paragraph 36 of the Complaint, except admits that JPS was contacted to determine its interest in publishing a work on the subject.

37.     Denies each and every allegation contained in paragraph 37 of the Complaint.

38.     Denies each and every allegation contained in paragraph 38 of the Complaint.

39.     Denies each and every allegation contained in paragraph 39 of the Complaint.

40.     Denies each and every allegation contained in paragraph 40 of the Complaint.

41.     Denies each and every allegation contained in paragraph 41 of the Complaint.

42.     With respect to paragraph 42 of the Complaint, repeats and realleges every response to paragraphs 1 through 41 of the Complaint as if fully set forth herein.

43.     Denies each and every allegation contained in paragraph 43 of the Complaint, expect admits that there was once a contractual relationship between Herzfeld and Tawil.

44.     Denies each and every allegation contained in paragraph 44 of the Complaint.

45.     Denies each and every allegation contained in paragraph 45 of the

Complaint, except admits that further written changes were submitted by Herzfeld after the completion date of the 1998 Contract.

46.     Admits the allegations contained in paragraph 46 of the Agreement, except as to a specific number of stipend payments.

47.     Denies each and every allegation contained in paragraph 47 of the Complaint.

48.     Denies each and every allegation contained in paragraph 48 of the Complaint, except that after the 1998 Contract was signed a co-authorship credit to Herzfeld was contemplated by the parties had Herzfeld fully performed his services.

49.     Denies each and every allegation contained in paragraph 49 of the Complaint.

50.     Denies each and every allegation contained in paragraph 50 of the Complaint.

51.     Denies each and every allegation contained in paragraph 51 of the Complaint.

52.     With respect to paragraph 52 of the Complaint, repeats and realleges every response to paragraphs 1 through 51 of the Complaint as if fully set forth herein.

53.     Denies each and every allegation contained in paragraph 53 of the Complaint.

54.     Denies each and every allegation contained in paragraph 54 of the Complaint.

55.     Denies each and every allegation contained in paragraph 55 of the Complaint.

## AFFIRMATIVE DEFENSES OF HAYIM TAWIL

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

56.    The Complaint fails to state a cause of action upon which relief may be granted.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

57.    Herzfeld's claims are barred by waiver, laches and/or estoppel.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

58.    Herzfeld's claims are barred by the applicable statutes of limitation.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

59.    Herzfeld did not perform the services for which he expects payment and credit.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

60.    Herzfeld's own breach of contract and other actions are responsible for whatever harm he alleges resulted.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

61.    Herzfeld's alleged contributions to the Work were minor and of no intrinsic value, such that no injury has befallen Herzfeld.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

62.    Amounts already paid to Herzfeld for the services he failed to perform exceed the financial benefits that might otherwise arise from any proceeds to the Book

7

to which he could claim entitlement had he performed his services.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

63.     Tawil proceeded in his actions in reliance upon Herzfeld's implied
agreement to withdraw from the project as evidenced by his return of properties as
demanded by Tawil and Herzfeld's failure to object to Tawil's assertions or otherwise
make any statement indicating any of the positions taken in the Complaint.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

64.     Herzfeld's allegation that he is entitled to a credit as a co-author is
untenable because he is clearly not a "co-author" of the work.  Such a credit would be a
sham.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

65.     Herzfeld misled Tawil as to his abilities with regard to complete the work,
including ability to translate texts, conduct research and produce usable materials.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

66.     There is no claim of copyright in this matter as: neither the work nor any
portion thereof was owned by Herzfeld; any contributions by Herzfeld were produced,
paid for and the property of Tawil, and were never Herzfeld's copyright, in whole or in
part; Herzfeld cannot properly identify which portion of his own alleged work was solely
created by him as opposed to being recited or supplied by Tawil or derived from sources
supplied by Tawil or other sources; and Herzfeld's contributions do not rise to that of a
co-author or even substantial contributor to the work for copyright purposes.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

65.     Herzfeld's registration of a copyright, which includes segments of the
Book, in his own name is an infringement upon the Book and work owned, created or

8

produced by Tawil as well as an infringement of the rights of other parties.

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

66.    Assuming *arguendo* that the material registered for copyright in Herzfeld's sole name was, as argued by Herzfeld himself, jointly authored by Herzfeld and Tawil, and the copyright therein is jointly owned by Herzfeld and Tawil, then at all times, Tawil acted within the scope of his rights.

## AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

67.    In his misleading representations to Tawil, his deceptive statements to this Court, and his basing a copyright claim on a fraudulent copyright filing (including the failure to attribute any portions of the work, by footnote or otherwise, to other research sources ), Herzfeld approaches the Court with unclean hands.

## COUNTERCLAIMS

## JURISDICTION

1.    This Court has jurisdiction over the counterclaims herein.  The parties have expressly submitted to the jurisdiction of this Court, and venue is proper.

## THE PARTIES

2.    The parties to these counterclaims are Akiva Herzfeld ("Hertzfeld"), the plaintiff named in the Complaint and the counterclaim defendant; and Hayim Tawil ("Tawil"), one of the Defendants named in the Complaint, and the counterclaim plaintiff.

## GENERAL ALLEGATIONS

3.    In 1998 Herzfeld agreed to Tawil's request that Herzzeld assist in the preparation of a work on the Crown of Aleppo, under the supervision of Tawil and pursuant to his instructions.

9

4.     A written contract was entered into (the 1998 Contract) which provided that Herzfeld would complete the work within one year.

5.     Payment to be made to Herzfeld in consideration for his rendering the full services required of him were outlined in the contract as a prepaid stipend of $1,000 (which was, paid) and also a speculative share of royalties to be earned.

6.     When the contract was entered into there was no agreement for any form of credit to Herzfeld.

7.     Despite Tawi's preparation and delivery of research materials to Herzfeld, and numerous instructions and recitations of narrative by Tawil to Herzfeld regarding the history to be recorded and statements to be included in the text, Herzfeld failed to fulfill his contractual commitment.

8.     After Herzfeld missed his contractual deadline, instead of terminating him, which Tawil had every right to do, Tawil allowed Herzfeld to continue with the work past the deadline, and even paid him extra funds to incentivize him to finish the work.

9.     During this process Tawil continued to dictate major narrative and factual materials to Herzfeld, direct Herzfeld's research and supply him with various texts.

10.    There was no agreement by Tawil to transfer any ownership or copyright interest to Herzfeld.

11.    Herzfeld's ability and skills to complete the task proved drastically inadequate, despite Tawil's continual assistance and the fact that Tawil paid for and supplied to Herzfeld extra translations to assist him.

12.    After a time Herzfeld avoided communicating with Tawil and Tawil was in the dark as to progress being made, if any, and eventually determined that the output from Herzfeld was not and was not going to be meaningful.

10

13.     Over the course of some two years following the original termination date of the 1998 Contract, despite his allegations of working nearly full time on the project, Herzfeld did not improve the quality or speed of his output and was clearly unable to complete the work.

14.     Thus, at the end of almost four years, the total product of Herzfeld's work, despite the contributions of Tawil and hundreds of pages of historical source materials, was only a few thousand words.

15.     Even the scant material compiled and submitted by Herzfeld did not contain footnotes or attributions to the sources from which Herzfeld had taken information, whether the source was Tawil or others.

16.     In 2003 Tawil formally and in writing terminated his relationship with Herzfeld, including any arrangement relating to the Book, and insisted upon return of the material Herzfeld had been given.

17.     In acquiescence to that demand Herzfeld returned most of the materials.

18.     Tawil's notice of termination to Herzfeld included Tawil's reminder that this project and property were his.

19.     Herzfeld did not dispute Tawil's position, and admits in the Complaint that he did not communicate with Tawil from that time to the date of the filing of this Complaint.

20.     Tawil justifiably assumed that Herzfeld had no further interest in the matter and charitably did not ask for return of the funds taken by Herzfeld.

21.     Tawil wrote the Book with a new co-author, and the work was completed and delivered to Jewish Publication Society ("JPS") which published the Book in 2010. The copyright in the Book is in the joint names of Tawil and his co-author.

22.     The interest expressed by JPS in the book was based upon Tawil's

11

reputation, the Book's subject matter and the recommendations of Chaim Potok, a well known author who had prompted JPS to take an interest in this publication.

23.     Herzfeld did not contact Tawil after that publication, but in August of 2010 Herzfeld wrote a letter to Tawil's employer, Yeshiva University, stating his claim that his work had been plagiarized and demanding that the University take action against Tawil.

24.     In November of 2010, Herzfeld registered for copyright, solely in his own name, what he alleges to be his work, and enclosed a copy of the registration (not a copy of the work itself) with the Complaint with this Court.

25.     The copyright registration sets forth that the year of completion of this work was 1999.

26.     The work registered by Herzfeld solely in his own name contained writings which were admitted by Herzfeld to be, at best for his interest, a co-authorship with Tawil.

27.     These writings had been created by, with and for Tawil, but Herzfeld's registration attributed neither authorship nor ownership to Tawil.

## COUNTERCLAIMS OF TAWIL
### AS AND FOR THE FIRST COUNTERCLAIM

28.     Tawil repeats and realleges each and every allegation contained in paragraphs 1 through 27 of these Counterclaims.

29.     Herzfeld breached his agreements with and promises to Tawil by failing to fulfill his commitment.

30.     Tawil incurred additional expense in having to translate the works which Herzfeld was supposed to be able to read.

31.     Having been given the opportunity and the additional funding to complete

12

the work, Herzfeld delayed its progress and Tawil had to incur additional expenses to
begin the process anew.

      32.    Tawil has been damaged.

## AS AND FOR THE SECOND COUNTERCLAIM
## COPYRIGHT INFRINGEMENT; COPYRIGHT FRAUD

      33.    Tawil repeats and realleges each and every allegation contained in
paragraphs 1 through 32 of these Counterclaims.

      34.    Herzfeld registered solely in his own name the copyright of a segment of
the Work, despite Tawil's ownership and Herzfeld's recognition of Tawil's ownership.

      35.    By Herzfeld's own admissions, he would at best be a co-author of some
of some portion of the fragment he worked on for payment but have no copyright
ownership to any portion of such materials for which he made no contribution.

      36.    The registration of such copyright by Herzfeld and his bringing this suit
under copyright law are violations of Tawil's rights, and a copyright fraud

      37.    Tawil has been damaged.

## AS FOR THE THIRD COUNTERCLAIM
## DEFAMATION

      38.    Tawil repeats and realleges each and every allegation contained in
paragraphs 1 through 37 of these Counterclaims.

      39.    By making false statement to Yeshiva University and mischaracterizing
the events that have taken place Herzfeld untruthfully impugned the reputation of Tawil.

      40.    Herzfeld sent a letter dated August 20, 2010  to to Dr. Richard M. Joel,
president of Yeshiva University.   The "Re" line of the letter was "Copyright Infringement

13

and Plagiarism by Professor Hayim Tawil" and so portrayed Tawil as an infringer and plagiarist He made no mention of the underlying facts relating to his involvement in the Book, such as his failure to fulfill his obligations, or his termination and withdrawal from the writing project, or the fact that his writings reflected Tawil's own contributions. Herzfeld demanded that the university discipline the professor and withdraw the book from publication (which was illogical, since the university was not the publisher of the Book). Herzfeld made reference to the university's own policies regarding authorship, which he did not follow in his own alleged writings. The purpose to his actions were to maliciously hurt and defame Professor Tawil.

     41.    Tawil has been damaged.

## AS AND FOR THE FOURTH COUNTERCLAIM
## TORTIOUS INTERFERENCE

     42.    Tawil repeats and realleges each and every allegation contained in paragraphs 1 through 41 of these Counterclaims.

     43.    Herzfeld made allegations to Tawil's employer which were false and unsubstantiated. Such allegations were willful and malicious, intending to injure Tawil's livelihood and his employment relationship with the university.

     44.    Tawil has been damaged.

## AS FOR THE FIFTH COUNTERCLAIM
## TORTIOUS INTEFERENCE

     45.    Tawil repeats and realleges each and every allegation contained in paragraphs 1 through 44 of these Counterclaims.

     46.    The improper bringing of this action against defendant JPS was willfully and maliciously undertaken to interfered with Tawil's contract relationship with JPS.

     47.    Tawil has been damaged.

14

## AS FOR THE SIXTH COUNTERCLAIM
## DEFAMATION

48.     Tawil repeats and realleges each and every allegation contained in paragraphs 1 through 47 of these Counterclaims.

49.     By bringing of this action against co-defendant JPS, containing allegations which are false and misleading, both as to contractual issues and copyright issues, Herzfeld untruthfully impugned the reputation of Tawil.

50.     Tawil has been damaged.


## PRAYER FOR RELIEF

Wherefore, Tawil respectfully requests that this Court enter judgment as follows:

(a) Dismissing the Complaint

(b) On the first counterclaim:
     (i)  A declaration that Herzfeld breached his obligations to Tawil.
     (ii) A award of compensatory damages to Tawil for his expenses, damages and lost income as a result of such breaches, as well as punitive damages.
     (iii) An award of the return to Tawil of payments made to Herzfeld for his expected services, together with interest running from the making of such payments.
     (iv) Such other and further relief as this Court may deem just and proper.

(c) On the second counterclaim:
     (i)  A declaration that Herzfeld knowingly and unlawfully infringed Tawil's copyright violation of 17USC § 501.
     (ii) Compensatory and statutory damages.

          (iii) A declaration invalidating the copyright registration made by Herzfeld, which declaration may be filed in the United States copyright office.

          (iv) An order that Herzfeld execute such other documents as may be reasonably necessary to acknowledge the withdrawal of his copyright claims to such materials.

          (v) Such other and further relief as this Court may deem just and proper.

(d) On the third counterclaim:

          (i) A declaration that Herzfeld committed a tort and violated Tawil's rights by interfering with his contractual relationship with his employer.

          (ii) An award of compensatory damages and punitive damages in amounts to be determined at trial.

          (iii) Such other and further relief as this Court may deem just and proper.

(e) On the fourth counterclaim:

          (i) A declaration that Herzfeld defamed Tawil by impugning Tawil's integrity and misstating to Tawil's employer the events that had taken place, with willfulness and malice, and full knowledge of the inaccuracy of Herzfeld's statements.

          (ii) An award of compensatory and punitive damages in amounts to be determined at trial.

          (iii) Such other and further relief as this Court may deem just and proper.

(f) On the fifth counterclaim:

          (i) A declaration that Herzfeld committed a tort and violated Tawil's rights by interfering with his contractual relationship with JPS.

          (ii) An award to Tawil of compensatory and punitive damages in amounts to be determined at trial.

          (iii) Such other and further relief as this Court may deem just and proper.

(g) On the sixth counterclaim:

          (i) A declaration that Herzfeld defamed Tawil by making false statements to JPS, with willfulness and malice, and full knowledge of the inaccuracy of his statements.

16

(i)  Compensatory and punitive damages as a result of the tortious interference by Herzfeld with Tawil's agreements with JPS.

(ii)  Such other and further relief as this Court may deem just and proper.

(h) With respect to the Complaint, all affirmative defenses and all counterclaims:

(i)  An award to Tawil of court costs and reimbursement of his legal fees and other expenses.

(ii) An order dismissing the Complaint against JPS and acknowledgment of the right of JPS to produce and distribute copies of the Book pursuant to its arrangements with Tawil.

Nicholas Gordon (#0415)
488 Madison Avenue, 18th Floor
New York, NY 10022
(212) 935-5500

*Attorney for Hayim Tawil*

Dated: February 24, 2011

17



# Appellate Division of the Supreme Court
# of the State of New York
# Second Judicial Department

---

I, Matthew G. Kiernan,   Clerk of the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, do hereby certify that        Nicholas Gordon        was duly licensed and admitted to practice as an Attorney and Counselor-at-Law in all the courts of the State, according to the laws of the State and the court rules and orders, on the  25 th   day of        April 1973, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counselors-at-Law on file in my office, has duly registered with the administrative office of the courts, and according to the records of this court is in good standing as an Attorney and Counselor-at-Law.



In Witness Whereof, I have hereunto set my hand and affixed the seal of said Appellate Division on  March 07, 2011.

Matthew G. Kiernan

**Clerk of the Court**

№ 178109